Cause No. _____

| | | |
|---|---|---|
| BRANT WRIGHT & TONYA WRIGHT, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | No. 294 OF |
| PRIMELENDING, A PLAINSCAPITAL | § | |
| COMPANY | § | |
| | § | |
| Defendant(s). | § | VAN ZANDT COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Brant Wright and Tonya Wright, ("Plaintiff(s)"), and serves this, the Original Petition against Defendant(s), Primelending, a Plainscapital Company ("Defendant(s)"), and in support thereof, would respectfully show the Court as follows:

I.

Discovery Level

1.  Discovery of this matter shall be conducted pursuant to Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

II.

Parties

2.  Plaintiff Brant Wright and Tonya Wright may receive all correspondence and filings via his attorney of record herein.

3.  Defendant Primelending, a Plainscapital Company, is a mortgage lending and servicing corporation and is located at 325 N SAINT PAUL ST STE 800 DALLAS, TX 75201. Defendant regularly does business in Texas. **Defendant may be served with their registered agent CT Corporation System 1999 BRYAN ST. SUITE 900 DALLAS, TX 75201.**

III.

Venue

4. Venue is proper in Van Zandt County, Texas, as that all or a substantial part of the events or omissions giving rise to the claim occurred in Van Zandt County, Texas and it involves real property located in Van Zandt County, Texas.  Tex. Civ. Prac. & Rem. Code §15.002(a) and §15.011.

IV.

Facts

5. Plaintiff Brant Wright and Tonya Wright are the owners of the property located at 3442 VZ County Road 3710, Wills Point, TX 75169 ("Property"). They reside at this address, which is their homestead. See attached true and correct copies of Plaintiff's FHA Promissory Note and FHA Deed of Trust as **EXHIBIT A**.

6. The January 4th, 2022 scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because they sent the Defendant a Qualified Written Request ("QWR"), pursuant to RESPA, 12 USC §2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B). See attached true and correct copy of QWR Letter sent to Defendant as **EXHIBIT B**.

7. Furthermore, the Defendant is in violation of the Dual Tracking Provisions of Regulation X (RESPA) 12 CFR 1024.41(g) because Plaintiffs have an active completed modification application submitted with the Defendant and no response has been provided, after Plaintiffs sent a follow-up/appeal letter in mid-December after being unable to get any update, via mail or over the phone. See attached true and correct copy of most recent Loss Mitigation Letter received from Defendant and Appeal Letter sent to Defendant as **EXHIBIT C**.

8.  Additionally, Plaintiffs never received a Notice of Intent to Foreclose or 20 day Notice to Cure Default as required by Texas Property Law.

9.  MERS as Nominee for Primelending is the original lender.

10. Allan B. Polunsky was the original Trustee.

11. The current mortgage holder is Primelending.

12. The current mortgage servicer is Cenlar Federal Savings Bank.

13. According to the Van Zandt CAD, the current value of the property is $225,000.00.

14. The monthly mortgage payment is $935.59 according to the Promissory Note.

15. The original loan amount was $171,830.00.

16. Plaintiffs therefore should have approximately $50,000.00 in equity in the property.

17. Recently the purported current trustee posted a Substitute Trustee Sale Notice in the Van Zandt County Clerk's Office.

18. On December 27th, 2021, through our counsel, we sent the Defendant a QWR pursuant to RESPA, 12 USC §2605(e).

19. The QWR included a notice of error that 12 C.F.R. 1024.411(g) prohibited the loan servicer from foreclosing.

20. Regulation X, 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to 12 C.F.R. 1024.41(g).

21. Neither the Defendant nor the Servicer have responded to the QWR.  Therefore, the currently scheduled substitute trustee sale of the property is unlawful.

22. The currently scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because Plaintiffs sent the Defendant, through counsel, a Qualified Written

Request ("QWR"), pursuant to RESPA, 12 USC §2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B).

23. If the foreclosure is not postponed until the loan servicer responds to the QWR, we will suffer irreparable harm by losing title to our home and our equity.

24. Additionally, over 37 days before January 4th, 2022, in early November 2021, we submitted a completed loan modification application to the loan servicer.  On that date we submitted all required completed loan modification forms, signed and dated, and submitted all required supporting documents, as required by the Defendant.

25. However, to date, no representative of the Defendant has sent us a rejection letter denying the loss mitigation relief, and the appeal process has been utilized, is exhausted, or is in applicable, as required by 12 C.F.R. 1024.41(g).

26. Plaintiffs have never before applied for a temporary restraining order to stop a foreclosure of my home.

27. Plaintiffs have significant equity in the Property.  They would like to see a result from their loan modification application. If the requested loss mitigation relief is rejected, in order to save their equity, they are ready, willing, and able to sell the home quickly in this very fast paced market.

28. All the facts stated herein are verified via the attached affidavit of Plaintiffs.

V.
Bond

29. Plaintiff requests that the court not set a bond since this is Plaintiff's homestead, and due to the time required to post a bond, the risks of appearing in person to do so during a pandemic, all combined with the imminent threat of the pending foreclosure auction.

VI.
Causes of Action

A.      Temporary Restraining Order and Injunctive Relief

30. Defendants, by foreclosing on the Property will cause Plaintiffs to suffer imminent harm and irreparable injury and must be stopped by a temporary restraining order and ultimately a permanent injunction.

31. It is essential that the Court immediately and temporarily restrain Defendants from foreclosing on the Property, scheduled for sale on October 5th, 2021.  It is essential that the court act immediately, prior to notice on Defendants and a hearing on the matter, as the date of the foreclosure sale is imminent and no amount of money will adequately compensate Plaintiff for the loss of the Residence.

32. For the reasons stated in this pleading, Plaintiff requests that, after final trial of this matter, the Court permanently enjoin Defendants from continuing to violate Plaintiff's rights by ceasing and desisting all foreclosure activity.

33. As shown by the facts pleaded herein, Plaintiff has a probable right to relief against Defendants because no response to Plaintiff's QWR letter was provided, Dual Tracking Violations, and violations of the Texas Property Code.

B.    *No Response to QWR*

34. The Substitute Trustee Sale is unlawful because the Plaintiff sent the Defendant a QWR, pursuant to RESPA, 12 USC § 2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under the statute and regulations.

35. On December 27th, 2021, Plaintiff sent the Defendant a QWR pursuant to RESPA, 12 USC §2605(e). See EXHIBIT "B" for a true and correct copy of the QWR letter.

36. The QWR included a notice of error that 12 C.F.R. 1024.411(g) prohibited the loan servicer from foreclosing.

37. Regulation X, 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) prohibits a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to 12 C.F.R. 1024.41(g).

38. The Court in *Smallwood v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 160926, 2015 WL 7736876, at *5, n.10 (S.D. Ohio Dec. 1, 2015), described the purpose of the RESPA statute and regulations as follows: RESPA is a consumer protection statute that requires loan servicers to provide timely written responses to borrowers under certain circumstances. 12 U.S.C. § 2605.

39. The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) is a Consumer Financial Protection Bureau regulation promulgated pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and RESPA, 12 U.S.C. § 2601, et seq.

40. Regulation X became effective on January 10, 2014. 78 FR 10696-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). 12 C.F.R. § 1024.35 outlines error resolution procedures by which a borrower may notify a servicer of errors on its account, triggering a response by the servicer.

41. The QWR included a notice of error regarding 12 CFR 1024.41(g) (dual tracking provisions of Regulation X).

42. Regulation X, 12 C.F.R 1024.35(b)(9) and (10), 1024.35(e)(3)(i)(B), and 1024.35(i)(2) prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to **12 CFR 1024.41(g)**.

43. See *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (2016)(stating "Basically, a servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower. See 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i).").

44. See *Kapsis v. American Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 444 (2013) (stating, "If a servicer of a 'federally related mortgage loan' receives a QWR from a borrower or an agent of the borrower, 'the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days [changed to 7 days by February 5014 Dodd-Frank amendments to regulation X] (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.' The servicer shall immediately 'make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower written notification of such correction (which shall include the name and telephone number of a representative ... who can provide assistance to the borrower).' Additionally, after receiving a QWR, a servicer must conduct an investigation and respond within 60 days with a written explanation that includes 'a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer' and 'the name and telephone number of an individual

employed by, or the office or department of, the servicer who can provide assistance to the

borrower. A servicer subject to RESPA who fails to comply with either of these requirements

is subject to actual damages, costs, and, 'in the case of a pattern or practice of

noncompliance with the requirements of [Section 2605]', statutory damages.".

45. Violation of RESPA, 12 USC § 2605(e) provides a private right of action for borrowers of

federally related loans. *Henok v. Chase Home Finance, LLC*, 915 F.Supp.2d 109

(D.D.C.2013) (stating, "Mortgagor's allegation that he sent letters to mortgagee and its

foreclosure agent requesting cure amount before the foreclosure on his property and that

mortgagee and its agent failed to respond to the letters stated a claim against mortgagee

under RESPA for failure to respond to borrower inquires, where mortgagor attached two

letters addressed to mortgagee and agent which included name of mortgagor, address of

property, and directly requested amount to cure his default.").

46. See *Coppola v. Wells Fargo Bank, N.A. (in re Coppola)*, 2018 Bankr. LEXIS 3383 (Bankr D

NJ Nov. 1, 2018), (*stating*, "Under the majority view, borrowers of federally related loans

have a private right of action (12 U.S.C.S. § 2605(f)), which includes violations of the

regulations under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.S. § 2601 et

seq., including 12 C.F.R. §§ 1024.35, 1024.36, 1024.41, even if the underlying regulation

does not specifically reference § 2605(f). The cases that allow a private right of action for

Regulation X violations, even where the regulation does not reference the § 2605(f)

remedies, often cite the remedial nature of RESPA and of Regulation X and the broad

mandate of the Consumer Financial Protection Bureau, which declared in its Mortgage

Servicing Rules, that regulations established pursuant to § 6 of RESPA (12 U.S.C.S. § 2605)

are subject to § 6(f) of RESPA (12 U.S.C.S. § 2605(f)), which provides borrowers a private

right of action to enforce such regulations").

47. As stated above, the loan is an FHA government backed loan (GSE's, privately held

corporations with public purposes created by Congress to increase the liquidity in the

residential mortgage industry).

48. Upon receipt of a valid QWR including a notice of error relating **12 CFR 1024.41(g)**, **12

C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B)** require a mortgagee and loan servicer

to stop the foreclosure process.

49. The damages the Plaintiff must plead under RESPA is met by including allegations in this

petition that the loan servicer misapplied payments, late charges, and/or escrow charges, or

alleging the Plaintiff will suffer irreparable harm unless the foreclosure sale is postponed.

*Agustin v. PNC Financial Services Group, Inc.*, 707 F.Supp.2d 1080 (D. Hawaii, 2010)

(stating, "Allegations that borrowers sent written requests to lender for information relating

to home refinancing loans, and that lender failed to take action with respect to these requests,

causing them actual damages, were sufficient to state a claim under Real Estate Settlement

Procedures Act (RESPA), even though borrowers did not plead pecuniary damages.").

50. As stated, on December 27th, 2021, more than seven days prior to the January 4th, 2022

foreclosure auction, Plaintiff sent Defendant a QWR pursuant to RESPA, 12 USC §2605(e).

51. Neither the Defendant nor the Servicer has responded to the QWR.  Therefore, the currently

scheduled substitute trustee sale of the property is unlawful.

52. If the foreclosure is not postponed until the loan servicer responds to the QWR, Plaintiff will

suffer irreparable harm by losing title to his home and his equity.

C.    *Dual Tracking Violations*

53. The Dual Tracking Provisions of Regulation X, 12 CFR 1024.41(g), state that if a borrower submits a completed loss mitigation application (e.g., loan modification application) over 37 days before the scheduled foreclosure sale date; in order to foreclose on the borrower, the servicer must send the borrower a hard rejection; i.e., a rejection letter denying the loss mitigation application and explaining that the Plaintiff is ineligible for any loss mitigation relief, and the appeal process has been exhausted or is inapplicable. 12 C.F.R 1024.41(g).

54. Over 37 days before January 4th, 2022, in August 2019, the Plaintiff submitted a completed loan modification application to the loan servicer. On that date the Plaintiff submitted all required completed loan modification application forms, signed and dated, and submitted all required supporting documents, as specified on the loan servicer's Website.

55. However, to date none of the representatives of the loan servicer have sent the Plaintiff a rejection letter denying the loss mitigation application and explaining that the Plaintiff is ineligible for any loss mitigation relief, and the appeal process has been exhausted or is inapplicable, as required by 12 C.F.R 1024.41(g).

56. If the foreclosure is not postponed until the loan servicer responds to the loss mitigation application and request, the Plaintiff will suffer irreparable harm by losing title to their homestead and their equity.

D.    *Violation of Texas Property Code – No Notice to Cure*

57. The power of acceleration is a harsh remedy and calls for close scrutiny. *See Vaughan v. Crown Plumbing & Sewer Serv., Inc., 523 S.W. 2d 72, 75 (Tex. Civ. App. – Houston (1st Dist.) 1975, writ ref'd n.r.e.).* The exercise of the right of acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); and see Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562,*

*569–570 (Tex. 2001).*  Both notices must be "clear and unequivocal".  *Id. at 893 and 566.* Finally, whether the right of acceleration was exercised is a fact question. *Holy Cross Church of God v. Wolf at 568.*

58. Under Texas Property Code Chapter 51 any debtor who, according to the records of the mortgage servicer, is obligated to pay the debt must be served with a valid and correct written notice of the trustee's sale by certified mail [Tex. Prop. Code § 51.002(b)(3)].

59. Failure to give the required notice is sufficient to cause a court to set aside the foreclosure sale. See Bauder v. Alegria, 480 S.W.3d 92, 98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.); Shearer v. Allied Live Oak Bank, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied).

60. In the case of a contractual lien on real property used as the debtor's residence, the debtor is entitled to a 20 day window of opportunity to cure any default before the mortgage servicer may provide notice of sale of the residence. *Tex. Prop. Code Sect. 51.002(d).*  Accordingly, the mortgage servicer must provide written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien, and must give the debtor at least 20 days to cure the default before a subsequent notice of sale can be given [*Tex. Prop. Code § 51.002(d)*; *Bauder v. Alegria, 480 S.W.3d 92, 97–98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.)* (when notice to cure and notice of foreclosure were sent to wrong address, trial court properly set aside foreclosure sale)

61. Therefore, because the 20 day notice to cure letter was not sent to the Plaintiff, according to the Plaintiff's sworn testimony herein, Plaintiff seeks declaratory relief that Defendant/Lender is not entitled to foreclose and requests that this court grant the request for a Temporary Restraining Order.

VII.
Damages

*Attorney's Fees*

62. Based upon the foregoing, Plaintiff requests recovery from Defendants pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code for all costs and reasonable and necessary attorneys' fees incurred herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems necessary and just.

VIII.
Conditions Precedent

63. All conditions precedent to Plaintiff's recovery on all claims and damages have been performed or have occurred.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a.    A temporary restraining order be issued without notice to Defendants, restraining each from conducting the foreclosure sale currently scheduled for January 4th, 2022;

b.    A temporary injunction be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from conducting a foreclosure sale during the pendency of this litigation; and

c.    A permanent injunction be issued, on final trial of this cause, enjoining Defendants from conducting a foreclosure and thereafter;

d.    Compensatory damages be awarded within the jurisdictional limits of the Court;

e.    Pre-judgment and post-judgment interest as provided by law;

f.    Exemplary damages as requested herein or as determined by the Court;

g.     Reasonable attorney's fees;

h.     Costs of suit; and

i.     Such other and further relief, both general and special, to which Plaintiff may be justly entitled, whether at law or in equity.

Respectfully submitted,

LAW OFFICES OF Ryan Daniel

By:___/s/ Ryan Daniel_____
        Ryan Daniel
        State Bar No. 24090604
        1525 US Hwy 380, Suite 500 #102
        Frisco, TX 75033
        ryan@ryandaniellaw.com
        (469)-688-0621
        **ATTORNEY FOR PLAINTIFF**

Cause No. _____

| | | |
|---|---|---|
| BRANT WRIGHT & TONYA WRIGHT, | § | IN THE _____ COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | _____ OF |
| | § | |
| PRIMELENDING, A PLAINSCAPITAL | § | |
| COMPANY | § | |
| | § | |
| Defendant(s). | § | VAN ZANDT COUNTY, TEXAS |

## AFFIDAVIT OF BRANT & TONYA WRIGHT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF VAN ZANDT | § |

1.      Our names are Brant Wright and Tonya Wright; We are over eighteen (18) years of age, of sound mind and are fully competent to make this Affidavit. We have personal knowledge of the facts stated herein. We understand that we can be held criminally responsible if we lie in this statement. This statement is true.

2.      We are the owners of the property located at 3442 VZ County Road 3710, Wills Point, TX 75169 ("Property"). We reside at this address, which is our homestead.

3.      The January 4th, 2022 scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because we sent the Defendant a Qualified Written Request ("QWR"), pursuant to RESPA, 12 USC §2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B).

4.      Furthermore, the Defendant is in violation of the Dual Tracking Provisions of Regulation X (RESPA) 12 CFR 1024.41(g) because we have an active completed modification application submitted with the Defendant and no response has been provided.

1

5.      Additionally, we never received a clear and unequivocal Notice of Intent to Foreclose or 20 day Notice to Cure Default as required by Texas Property Law.

6.      MERS as Nominee for Primelending is the original lender.

7.      Allan B. Polunsky was the original Trustee.

8.      The current mortgage holder is Primelending.

9.      The current mortgage servicer is Cenlar Federal Savings Bank.

10.     According to my refinance documents from the Van Zandt CAD, the current value of the property is $225,000.00.

11.     The monthly mortgage payment is $935.59 according to the Promissory Note.

12.     The original loan amount was $171,830.00.

13.     We therefore should have approximately $50,000.00 in equity in the property.

14.     Recently the purported current trustee posted a Substitute Trustee Sale Notice in the Van Zandt County Clerk's Office.

15.     On December 27th, 2021, through our counsel, we sent the Defendant a QWR pursuant to RESPA, 12 USC §2605(e).

16.     The QWR included a notice of error that 12 C.F.R. 1024.411(g) prohibited the loan servicer from foreclosing.

17.     Regulation X, 12 C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to 12 C.F.R. 1024.41(g).

18.     Neither the Defendant nor the Servicer have responded to the QWR.  Therefore, the currently scheduled substitute trustee sale of the property is unlawful.

19.     The currently scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because we sent the Defendant, through counsel, a Qualified Written Request

("QWR"), pursuant to RESPA, 12 USC §2605(e); however, the Defendant did not cancel the

Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under 12

C.F.R. 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B).

20.     If the foreclosure is not postponed until the loan servicer responds to the QWR, we will

suffer irreparable harm by losing title to our home and our equity.

21.     Additionally, over 37 days before January 4th, 2022, in early November 2021, we

submitted a completed loan modification application to the loan servicer.  On that date we

submitted all required completed loan modification forms, signed and dated, and submitted all

required supporting documents, as required by the Defendant.

22.     However, to date, no representative of the Defendant has sent us a rejection letter denying

the loss mitigation relief, and the appeal process has been utilized, is exhausted, or is in

applicable, as required by 12 C.F.R. 1024.41(g).

23.     I have never before applied for a temporary restraining order to stop a foreclosure of my

home.

24.     We have significant equity in the Property.  We would like to see a result from out loan

modification application. If the requested loss mitigation relief is rejected, in order to save our

equity, we are ready, willing, and able to sell the home quickly in this very fast paced market.

## VERFICATION UNDER CPRC 132.001

My name is Brant Wright. My date of birth is _____11-3-68_____
and my address is 3442 VZ County Road 3710, Wills Point, TX 75169. I declare under penalty
of perjury that the facts stated herein are true and correct.

Signed on December _30_, 2021 in Van Zandt County, Texas.

Signature: _Brant Wright_____

## VERFICATION UNDER CPRC 132.001

My name is Tonya Wright. My date of birth is _____10-7-68_____
and my address is 3442 VZ County Road 3710, Wills Point, TX 75169. I declare under penalty
of perjury that the facts stated herein are true and correct.

Signed on December _30_, 2021 in Van Zandt County, Texas.

Signature: _Tonya Wright_____

4

**Exhibit A 000001**

# NOTE

FHA Case No.

511-1973114-703
WRIGHT
Loan #: 3746007540
MIN: 100053601316176766

OCTOBER 23, 2017          CANTON,          TEXAS
[Date]                    [City]           [State]

3442 VZ COUNTY ROAD 3710, WILLS POINT, TX 75169-6364
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $171,830.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is PRIMELENDING, A PLAINSCAPITAL COMPANY. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.125%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on DECEMBER 1, 2017. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on NOVEMBER 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18111 PRESTON ROAD, SUITE 900, DALLAS, TX 75252 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $935.59.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe

36.81

FHA Multistate Fixed Rate Note - 03/16



**Exhibit A 000002**

3746007540

under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further

**Exhibit A 000003**

3746007540

notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_(signature)_
- BORROWER - TONYA WYNETTE WRIGHT

_(signature)_
BORROWER - BRANT RAY WRIGHT

*[Sign Original Only]*

MORTGAGE LOAN ORIGINATOR RICHARD MILLER
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 178251
MORTGAGE LOAN ORIGINATION COMPANY PRIMELENDING, A PLAINSCAPITAL COMPANY
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 13649

PAY TO THE ORDER OF
WITHOUT RECOURSE
PrimeLending, a PlainsCapital Company

BY:_____

PRINTED NAME:_____

TITLE:_____

**Exhibit A 000004**



Prepared By:
JANICE DAVIS
POLUNSKY BEITEL GREEN, LLP
18111 PRESTON ROAD, SUITE 900
DALLAS, TX 75252
(888) 812-2711

After Recording Mail To:
NTC
2100 ALT 19 NORTH
PALM HARBOR, FL 34683
727-771-4000
ATTN: POST CLOSING - ACCOUNT # PRLO1

[Space Above This Line For Recording Data]

## DEED OF TRUST

WRIGHT
Loan #: 3746007540
MIN: 100053601316176766
MERS Phone: 1-888-679-6377
PIN: R000011863
Case #: 511-1973114-703

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated OCTOBER 23, 2017, together with all Riders to this document.
(B) "Borrower" is TONYA WYNETTE WRIGHT AND BRANT RAY WRIGHT, WIFE AND HUSBAND.

FHA Texas Deed of Trust - 09/15
⬧ 19401.16

Page 1 of 17



3746007540

Borrower is the grantor under this Security Instrument.

(C) "Lender" is PRIMELENDING, A PLAINSCAPITAL COMPANY. Lender is a CORPORATION organized and existing under the laws of TEXAS. Lender's address is 18111 PRESTON ROAD, SUITE 900, DALLAS, TX 75252. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is ALLAN B. POLUNSKY. Trustee's address is 17806 I.H. 10 WEST, SUITE 450, SAN ANTONIO, TX 78257.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 23, 2017. The Note states that Borrower owes Lender ONE HUNDRED SEVENTY-ONE THOUSAND EIGHT HUNDRED THIRTY AND 00/100 Dollars (U.S. $171,830.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2047.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non -appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,

FHA Texas Deed of Trust - 09/15
🖘 19401.16                    Page 2 of 17

3746007540

the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **VAN ZANDT:**
**\*\*\* SEE EXHIBIT "A" \*\*\***
which currently has the address of **3442 VZ COUNTY ROAD 3710, WILLS POINT, Texas 75169-6364** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

3746007540

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish

3746007540

to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to

3746007540

Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

3746007540

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender

FHA Texas Deed of Trust - 09/15
19401.16                          Page 7 of 17

**Exhibit A 000011**

3746007540

(or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous

**Exhibit A 000012**

3746007540

Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who

**Exhibit A 000013**

3746007540

co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it

FHA Texas Deed of Trust - 09/15

**Exhibit A 000014**

3746007540

might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in

3746007540

the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any

**Exhibit A 000016**

3746007540

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with

**Exhibit A 000017**

3746007540

Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower

FHA Texas Deed of Trust - 09/15
19401.16                                   Page 14 of 17

**Exhibit A 000018**

3746007540

acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

BORROWER - TONYA WYNETTE WRIGHT

BORROWER - BRANT RAY WRIGHT

FHA Texas Deed of Trust - 09/15
19401.16                        Page 15 of 17

**Exhibit A 000019**

3746007540

---

[Space Below This Line For Acknowledgment]

---

STATE OF TEXAS

COUNTY OF VAN ZANDT

This instrument was acknowledged before me on *October 23, 2017* by

*Tonza Wynette Wright and Bart Kay Wright*

---

---

CASSIDY N PERKINS
Notary Public, State of Texas
Comm. Expires 06-06-2020
Notary ID 13068866-5

*Cassidy N. ____*
Notary Public

My Commission Expires:
*4/4/2020*

---

**Exhibit A 000020**

3746007540

MORGAGE LOAN ORIGINATOR RICHARD MILLER
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
178251
MORTGAGE LOAN ORIGINATION COMPANY PRIMELENDING, A PLAINSCAPITAL COMPANY
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
13649

## Notice of Substitute Trustee's Sale

Notice Concerning Military Duty: Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Tex. Prop. Code § 51.002(i)

| | |
|---|---|
| Deed of Trust Date: October 23, 2017 | Original Mortgagor/Grantor: TONYA WYNETTE WRIGHT AND BRANT RAY WRIGHT |
| Original Beneficiary / Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY., ITS SUCCESSORS AND ASSIGNS | Current Beneficiary / Mortgagee: PRIMELENDING, A PLAINSCAPITAL COMPANY |
| Recorded in: Volume: n/a Page: n/a Instrument No: 2017-009341 | Property County: VAN ZANDT |
| Mortgage Servicer: CENLAR FEDERAL SAVINGS BANK | Mortgage Servicer's Address: 425 Phillips Blvd. Ewing, New Jersey 08618-1430 |

* The mortgage servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Secures: Note in the original principal amount of $171,830.00, executed by BRANT WRIGHT and TONYA WRIGHT and payable to the order of Lender.

Property Address/Mailing Address: 3442 VZ COUNTY ROAD 3710, WILLS POINT, TX 75169

Legal Description of Property to be Sold: BEING 1.78 ACRES OF LAND SITUATED IN THE E. HUGHART SURVEY, ABSTRACT NO. 338, VAN ZANDT COUNTY, TEXAS, BEING A PART OF LOT 19, BLOCK B, OF TIMBER TRAIL ACRES, AN ADDITION TO VAN ZANDT COUNTY, TEXAS, AS FOUND RECORDED IN GLIDE 140A OF THE PLAT RECORDS OF VAN ZANDT COUNTY, TEXAS, AND BEING ALL OF THAT CERTAIN CALLED 1.777 ACRE TRACT DESCRIBED IN A SUBSTITUTE TRUSTEE'S DEED, DATED JUNE 6, 2011, FROM RANDY DANIEL, SUBSTITUTE TRUSTEE, TO FEDERAL HOME LOAN MORTGAGE CORPORATION, RECORDED IN DOCUMENT NO. 2011-004221 OF THE REAL RECORDS OF VAN ZANDT COUNTY, TEXAS. SAID 1.78 ACRES OF LAND BEING MORE PARTICULARLY DESCRIBED AS F         O         L         L         O         W         S         :

BEGINNING AT A 5/8 INCH IRON ROD (FOUND) FOR CORNER AT THE SOUTH CORNER OF LOT 19, BLOCK B, OF TIMBER TRAIL ACRES, AT THE SOUTH CORNER OF THE ABOVE REFERENCED 1.777 ACRE TRACT, AND BEING LOCATED AT THE INTERSECTION OF THE NORTHWEST RIGHT-OF-WAY LINE OF COUNTY ROAD NO. 3710 WITH THE NORTHEAST RIGHT-OF-WAY LINE OF COUNTY ROAD NO.                                                                                                           3725;

THENCE: NORTH 45 DEG. 11 MIN. 02 SEC. WEST, WITH THE SOUTHWEST LINE OF LOT 19, WITH THE SOUTHWEST LINE OF SAID 1.777 ACRE TRACT, AND WITH THE NORTHEAST RIGHT-OF-WAY LINE OF COUNTY ROAD NO. 3725, A DISTANCE OF 307.18 FEET TO A 5/8 INCH IRON ROD (FOUND) FOR CORNER AT THE WEST CORNER OF LOT 19 AND AT THE WEST CORNER OF SAID 1.777 ACRE T         R         A         C         T         ;




**Exhibit A 000022**

THENCE: NORTH 44 DEG. 49 MIN. 16 SEC. EAST, WITH THE NORTHWEST LINE OF LOT 19 AND WITH THE NORTHWEST LINE OF SAID 1.777 ACRE TRACT, A DISTANCE OF 251.18 FEET TO A 1/2 INCH IRON ROD (FOUND) FOR CORNER AT THE NORTH CORNER OF SAID 1.777 ACRE TRACT AND AT WEST CORNER OF THAT CERTAIN CALLED 2.00 ACRE TRACT DESCRIBED IN A SPECIAL WARRANTY DEED WITH VENDOR'S LIEN FROM WELLS FARGO BANK, N.A. TO COREY L. SMITH AND LEVERY K. SMITH, RECORDED IN VOLUME 2244, PAGE 510 OF THE REAL RECORDS OF VAN ZANDT                                          COUNTY,                                          TEXAS;

THENCE: SOUTH 45 DEG. 27 MIN. 34 SEC. EAST, OVER AND ACROSS LOT 19, WITH THE NORTHEAST LINE OF SAID 1.777 ACRE TRACT, AND WITH THE SOUTHWEST LINE OF SAID 2.00 ACRE TRACT, A DISTANCE OF 306.91 FEET TO A 1/2 INCH IRON ROD (FOUND) FOR CORNER IN THE SOUTHEAST LINE OF LOT 19, AT THE EAST CORNER OF SAID 1.777 ACRE TRACT, AT THE SOUTH CORNER OF SAID 2.00 ACRE TRACT, AND BEING LOCATED IN THE NORTHWEST RIGHT-OF-WAY LINE OF COUNTY                            ROAD                            NO.                            3710;

THENCE: SOUTH 44 DEG. 45 MIN. 34 SEC. WEST, WITH THE SOUTHEAST LINE OF LOT 19, WITH THE SOUTHEAST LINE OF SAID 1.777 ACRE TRACT, AND WITH THE NORTHWEST RIGHT-OF-WAY LINE OF COUNTY ROAD NO. 3710 A DISTANCE OF 252.65 FEET BACK TO THE PLACE OF BEGINNING AND CONTAINING                    1.78                    ACRES                    OF                    LAND.

BEING THE SAME LAND IN WARRANTY DEED WITH VENDOR'S LIEN DATED NOVEMBER 8, 2016 FROM JAMES C. TRAVIS AND WIFE, RAYLIE TRAVIS TO NT PREMIER PAINTING LLC, RECORDED IN DOCUMENT NO. 2016-009847, REAL RECORDS OF VAN ZANDT COUNTY, TEXAS. CORRECTED IN ERROR CORRECTION AFFIDAVIT, RECORDED IN DOCUMENT NO. 2017-004460, REAL RECORDS OF VAN                    ZANDT                    COUNTY,                    TEXAS.

| Date of Sale: January 04, 2022 | Earliest time Sale will begin: 11:00 AM |
| --- | --- |

**Place of sale of Property:** Van Zandt County Courthouse, 121 E. Dallas Street, Canton, TX 75103 OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE OR IN THE AREA DESIGNATED BY THE COMMISSIONER'S COURT, PURSUANT TO SECTION 51.002 OF THE TEXAS PROPERTY CODE

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

**Appointment of Substitute Trustee:** Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust, the same is now wholly due. Because of that default, *PRIMELENDING, A PLAINSCAPITAL COMPANY*, the owner and holder of the Note, has requested Darla Boettcher, Ramiro Cuevas, Aurora Campos, Jonathan Harrison, Shawn Schiller, Patrick Zwiers, Angie Uselton, Monica Henderson, Jami Hutton, Dana Kamin, Lisa Bruno, Ronda Tyler, Randy Daniel, Cindy Daniel, Jim O'Bryant whose address is 1 Mauchly Irvine, CA 92618 OR Randy Daniel or Cindy Daniel or Jim O'Bryant whose address is 14800 Landmark Blvd., Suite 850, Dallas, TX 75254, to sell the property. The Trustee(s) has/have been appointed Substitute Trustee in the place of the original trustee, in the manner authorized by the deed of trust.

**Terms of Sale:** The Foreclosure Sale will be conducted as a public auction and the Property will be sold to the highest bidder for cash, except that *PRIMELENDING, A PLAINSCAPITAL COMPANY* bid may be by credit against the indebtedness secured by the lien of the Deed of Trust.

**Exhibit A 000023**

Pursuant to section 51.009 of the Texas Property Code, the Property will be sold "AS IS," without any expressed or implied warranties, except as to the warranties (if any) provided for under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Pursuant to section 51.0075(a) of the Texas Property Code, Darla Boettcher, Ramiro Cuevas, Aurora Campos, Jonathan Harrison, Shawn Schiller, Patrick Zwiers, Angie Uselton, Monica Henderson, Jami Hutton, Dana Kamin, Lisa Bruno, Ronda Tyler, Randy Daniel, Cindy Daniel, Jim O'Bryant whose address is 1 Mauchly Irvine, CA 92618 OR Randy Daniel or Cindy Daniel or Jim O'Bryant whose address is 14800 Landmark Blvd., Suite 850, Dallas, TX 75254, Trustee reserves the right to set further reasonable conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Darla Boettcher, Ramiro Cuevas, Aurora Campos, Jonathan Harrison, Shawn Schiller, Patrick Zwiers, Angie Uselton, Monica Henderson, Jami Hutton, Dana Kamin, Lisa Bruno, Ronda Tyler, Randy Daniel, Cindy Daniel, Jim O'Bryant whose address is 1 Mauchly Irvine, CA 92618 OR Randy Daniel or Cindy Daniel or Jim O'Bryant whose address is 14800 Landmark Blvd., Suite 850, Dallas, TX 75254, Trustee.

**Limitation of Damages**: If the sale is set aside for any reason, the purchaser at the sale shall be entitled only to a return of the funds paid. The purchaser shall have no further recourse against Mortgagor, the Mortgagee, or the Mortgagee's attorney.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

/s/William Attmore
William Attmore
Attorney for Cenlar Federal Savings Bank
State Bar No.:24064844
wattmore@rascrane.com
Robertson, Anschutz, Schneid, Crane & Partners,
PLLC / Attorney for Mortgagee
5601 Executive Dr, Suite 400
Irving, TX 75038
Telephone: 817-873-3080
Facsimile: (817)796-6079

Ryan Baylor Attorney at Law, PLLC
1525 US Hwy 380, Suite 500 #102
Frisco, TX 75033

**Exhibit B 000001**



USPS CERTIFIED MAIL

**9214 8901 4298 0460 6235 50**

0005640377000011
PrimeLending
PO Box 77423
Ewing, NJ 08628



# See Important Information Enclosed

5640377.1.1c

0106000050111I9

Exhibit B 000002

Ryan Daniel, Attorney at Law, PLLC
1525 US Hwy 380, Suite 500 #102
Frisco, Texas 75033

Licensed in: The State of Texas; &
The United States District Court,
E and N Districts of Texas



TO:
PrimeLending
PO Box 77423
Ewing, NJ 08628

VIA: Certified Mail

RE:  Borrower:            Brant and Tonya Wright

      Property Address:    3442 VZ County Road 3710, Wills Point, TX 75169

      Account Number:      0104612775

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

NOTICE TO CEASE AND DESIST January 4th, 2022 FORECLOSURE

DISPUTE OF DEBT AND VALIDATION OF DEBT

To Whom It May Concern:

Please be advised that I represent the above-referenced borrower with respect to the mortgage loan you are servicing on the above-referenced property. My client has authorized me to send this request on their behalf. Specifically, we are providing you with a notice of error concerning the servicing of this loan and are requesting that these errors be corrected, or that you provide us with the documents that you depended on should you determine there is no error.

As servicer of my client's mortgage loan, please treat this letter as a "Qualified Written Request" under the Federal Servicer Act and as a "Notice of Error" under the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. §1024.35; and, as pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, Subpart C, 12 C.F.R. §1024.30 to 12 C.F.R. §1024.41.

Ryan Daniel, Attorney at Law, PLLC
1525 US Hwy 380, Suite 500 #102
Frisco, Texas 75033

Licensed in: The State of Texas; &
The United States District Court,
E and N Districts of Texas

Please note the borrower questions and disputes the amount claimed as due, the servicing of this account, the application of payments to this account, and your right to service and/or take collection action (including foreclosure action) regarding this account.

Pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 C.F.R. §1024.35(a) please respond to this written notice asserting the following errors:

1. Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
2. Failure to apply an accepted payment to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law.
3. Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt.
4. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
5. Failure to provide an accurate and detailed payoff balance amount upon a borrower's request.
6. **Failure to post-pone foreclosure proceedings while the account is under review for a loan modification request.**
7. **Failure to provide promised and required written status updates as to the above mentioned modification request.**
8. Any other error relating to the servicing of a mortgage loan.
9. Failure to send the borrower monthly statements.
10. Failure to provide an initial amortization schedule at the purchase of the real estate in question.

In addition to the above responses required under Federal and Texas Law, we are also requesting the following documents. (Regardless of how many servicers were involved, as the alleged current servicer, you are responsible to provide the requested information):

1.     A complete and itemized statement of the loan history from the origination date of the loan to the date of this letter including but not limited to, all receipts by way of payment or otherwise, and all charges to the loan in whatever form. This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this account.

2.     A complete and itemized statement of all advances or charges against this loan for any purpose that are not reflected on the loan history transaction statement provided in answer to question #1.

3.     A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate

**Exhibit B 000004**

Ryan Daniel, Attorney at Law, PLLC
1525 US Hwy 380, Suite 500 #102
Frisco, Texas 75033

Licensed in: The State of Texas; &
The United States District Court,
E and N Districts of Texas

---

property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance or any other insurance product.

4.    A complete and itemized statement of any late charges to this loan from the date of this loan to the date of this letter.

5.    **The current amount needed to pay off the loan in full, good through thirty (30) days from the date of this letter**.

6.    **A complete and itemized statement of any funds deposited in any post-petition suspension account(s) or corporate advance account(s), including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts**.

7.    A complete and itemized statement from the origination date of this loan to the date of this letter of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against, or otherwise assessed to this loan.

8.    The full name, address and phone number of the current holder of Note, including the name, address and phone number of any trustee, custodian or other fiduciary.

9.    All written loss rules and work-out procedures related to any defaults regarding this loan and similar loans.

10.    The procedural manual used with respect to the servicing or sub-servicing of this loan.

11.    A summary of all fixed or standard legal fees approved for any form of legal services rendered in connection with this account.

12.    Have any monies or other consideration been received from any source other than the borrower(s) regarding this loan, including but not limited to monies received from any insurance claim, **any mortgage insurance proceeds that has been collected,** any federal agency or program, or any other entity?  (This is defined to include any consideration received for the sale, transfer or assignment of the loan.)   If the answer is yes, then specify the following:

    a)  From whom the monies or consideration was received

    b)  Dates of payments

    c)  How the funds were applied

    d)  Amount of payments made

---

5640377.1.5

**Exhibit B 000005**

Ryan Daniel, Attorney at Law, PLLC                    Licensed in: The State of Texas; &
1525 US Hwy 380, Suite 500 #102                       The United States District Court,
Frisco, Texas 75033                                    E and N Districts of Texas

---

**13.** <u>**Certify Copies of the following documents related to this loan:**</u>

    a)  The Note

    b)  Deed of Trust

    c)  Loan Application (1003)

    d)  Good Faith

    e)  Final Truth And Lending Disclosure (TIL)

    f)  Final HUD -1 Settlement Statement

    g)  Servicing Disclosures

    h)  Any and all assignments of the note

    i)  Any and all assignments of the Deed of Trust

    j)  Any and all alonges, modifications, amendments, transfers or any other document relating to the holding, possession or ownership of either the Note or Deed of Trust

    k)  Appointment(s) of Substitute Trustee(s), if any.

Please provide your written responses, as required by law, to the address listed on the bottom of this letterhead within the statutory period allowed under 12 C.F.R. §1024.35(d) and 12 C.F.R. §1024.35(e).

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time, you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd- Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

**You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.**

---

Exhibit B 000006

Ryan Daniel, Attorney at Law, PLLC
1525 US Hwy 380, Suite 500 #102
Frisco, Texas 75033

Licensed in: The State of Texas; &
The United States District Court,
E and N Districts of Texas

---

## TRUTH – IN-LENDING ACT § 131(f)(2)

---

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the current owner(s) of the mortgage and the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new noticerules are enforceable by private right of action. *15 USC 1641.***

Sincerely,

_____/s/ Ryan Daniel_____
Ryan Daniel, Attorney at Law

---

**Exhibit C 000001** 0104612773 (?)



Toll Free: 855-501-3027
PrimeLending.LoanAdministration.com

November 12, 2021

Hours of Operation:
Customer Service : Monday - Friday, 8:30 a.m. to 8:00 p.m. ET
Collections Dept.: Monday - Friday, 8:00 a.m. to 9:00 p.m. ET

Tonya Wynette Wright
Brant Ray Wright
PO Box 1192
735 Newton Rd Ste 202
Canton, TX 75103

**Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to: PO Box 77423, Ewing, NJ 08628**

RE: Loan Number: 0104612775
    Property Address: 3442 Vz County Road 3710
                      Wills Point TX 75169-6364



Dear Customer:

### Why am I receiving this letter?

We have received your request to be considered for a loan modification or other foreclosure prevention alternative.

If your account is in an existing loss mitigation option, the terms of that option will remain in effect until you qualify for and accept a new offer, cancel that option, or fail to perform under the terms of the existing option. If you have any questions, please contact us at 855-334-8426.

### What are the next steps?

Within 5 business days, we will review the documentation you provided. We will notify you by mail if further information is needed to determine if you qualify for a mortgage assistance program or if we are unable to review your package.

If your package is deemed incomplete, a letter will be sent listing the missing documents that are needed to complete a full review. Attempts to contact you will be made to collect any missing documents over a reasonable period of time.

If no further information is needed, we estimate it will take approximately 30 days for an underwriter to review your completed mortgage assistance package and render a decision. Foreclosure and collection activity will cease during this 30 day review period, unless further information is required by the underwriter, to render a decision as to whether or not you qualify for a mortgage assistance program.

If an underwriter determines that additional information is needed to render a decision, you will be provided an incomplete package notice and will be allowed 30 days to submit the requested documentation. If documents are not returned within the reasonable timeframe of 30 days, your request may be withdrawn. Once a decision is made we will attempt to contact you by phone to discuss the decision. The decision relating to your application will also be provided to you in writing.

LM002 039 MT2 DN  (LM012)

Exhibit C 000002

Loan Number: 0104612775

<u>**Who can I contact if I have questions or concerns?**</u>

In the event that you need to submit additional information related to your mortgage assistance package, it can be sent to us

- By fax:    (609) 718-2655
- By mail:   Loss Mitigation Department
            PO Box 77408
            Ewing, NJ 08628-6408
- By email:  DCCDocs@loanadministration.com

If you are sending more than one page of documents, please print your name and loan number at the top of each page!

If you have any questions or concerns about the contents of this letter, you can call us at 855-334-8426 during the business hours listed above.

Please note that you can seek assistance at no charge from a HUD-approved housing counselor and can request assistance in understanding these notices by calling the HOPE Hotline number at (888) 995-HOPE, or you can reach them via the web at 995hope.org.

<u>**Is there additional information I should know?**</u>

This letter and the loan workout review process shall not waive any of our rights, or your obligations under the note or mortgage. This means you are still responsible to continue making your loan payments (unless you have been relieved of your obligations under the note, if discharged in a Chapter 7 Bankruptcy Proceeding).

Depending upon investor requirements, we may need to perform an interior appraisal/valuation of your property before we can determine if you qualify for a mortgage assistance program. If this is necessary, your assistance will be required to allow the vendor(s) timely and sufficient access to the property to complete the interior appraisal/valuation. If we order an appraisal/valuation we will promptly provide you with a copy of the completed report, even if your mortgage program is not approved.

Loss mitigation options may have costs associated with them that you may be responsible for after completion of loss mitigation. Examples of these costs include title searches, appraisals and valuations. The costs may vary depending on the loan information, geographic area, etc. Please contact us for information on costs that may be associated with your loss mitigation evaluation.

LM002 039 MT2 DN  (LM012)

**Exhibit C 000003**

Loan Number: 0104612775

Thank you.

Required Legal Notice(s)

This communication is from a debt collector. Any information obtained can be used for the purpose of collecting a debt. However, if you are in an active bankruptcy case or your debt has been discharged in bankruptcy, this notice is for informational purposes only and is not a demand for payment or an attempt to collect a debt for which your personal liability has been discharged in bankruptcy.

LM002 039 MT2 DN (LM012)



594116 000018118 09DP03 00064002

**Exhibit C 000004**

December 20, 2021

Brant and Tonya Wright

3442 VZ County Road 3710

Wills Point, TX 75169

Account # 0104612775

APPEAL NOTICE OF LOAN MODIFICATION

We want to appeal the load modification.
Our loan has only been reviewed for one loan modification and approved.  The last time in January of
2021 all documents were not completed and work out package was cancelled.

We then overnighted documents on November 5th and package was deemed completed on November
15th.  Was sent foreclosure letter before 30 days were up.   Was told that we were only allowed 2
reviews.  At this point we have only received one review that was completed.

Please review our documents and give us and update.

Thanks

Brant and Tonya Wright